**The below described is SIGNED.**

Dated: January 13, 2014



**WILLIAM T. THURMAN**
U.S. Bankruptcy Judge



IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>**STANFORD MALZAHN ELLSWORTH,**<br><br>Debtor. | Bankruptcy No. 12-27213<br><br>Chapter 7 |
| **CAROL NAYLOR,**<br><br>Plaintiff,<br><br>v.<br><br>**STANFORD MALZAHN ELLSWORTH,**<br><br>Defendant. | Adversary Proceeding 12-2354<br><br>Chief Judge William T. Thurman |

**MEMORANDUM DECISION**

The matter before the Court is the Motion for Summary Judgment (the "Motion") of Ms. Carol Naylor (the "Plaintiff") seeking summary judgment against Mr. Stanford Ellsworth (the "Defendant"). The Court conducted a hearing on the Motion on December 2, 2013. Ms. Mona

1

Burton appeared on behalf of the Plaintiff and Mr. Jesse Murph appeared on behalf of the Defendant. Both parties previously filed memoranda supporting and opposing the Motion. The Court has carefully considered the oral arguments of the parties, the pleadings and other court papers on file, and has conducted its own independent review of applicable law. The Court now issues the following Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 9014 and 7052.

## I. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b). This adversary proceeding concerns a determination as to the dischargeability of a particular debt and is therefore a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is appropriately laid in this district under 28 U.S.C. § 1409, and the Court finds that notice of the hearing on the Motion was proper in all respects.

## II. PROCEDURAL BACKGROUND AND FINDINGS OF FACT

1. The Plaintiff and the Defendant were married in 1997 in Utah.[1] The marriage was the second marriage for the Plaintiff.[2]

2. After seven years of marriage, the Defendant filed a verified complaint for divorce on June 15, 2004 in the Third District Court for Salt Lake County, Utah (the "State Court").[3]

---

[1] Docket No. 13, ¶1. Unless otherwise noted, subsequent notices to the docket are to the docket in the above captioned adversary proceeding.

[2] The Plaintiff's prior marriage ended when her first husband passed away (*infra* Paragraph 6).

[3] Docket No. 13, ¶ 3.

3. On July 1, 2004, the Plaintiff filed her Answer and Counterclaim (the "July 1, 2004 Counterclaim") in the State Court,[4] which she subsequently moved to amend on December 16, 2004 (the "Amended Counterclaim").[5]

4. The Defendant filed a reply to the July 1, 2004 Counterclaim on July 19, 2004.[6]

5. Subsequently, the State Court entered the Stipulation and Agreement to an Order of Bifurcation and Decree of Annulment on August 29, 2005 (the "Annulment Decree"), which annulled the marriage between the parties ab initio under Utah law.[7]

6. The Plaintiff noted in her pleadings that she specifically requested the annulment so as to receive a retroactive reinstatement of Social Security survivor benefits from her late first husband for the benefit of her children.[8]

7. On October 28, 2005, Plaintiff served the Defendant with a Notice of Deposition.[9]

---

[4] The Court takes judicial notice of the State Court Docket for Case No. 044903534 (the "State Court Docket") assigned to the Honorable Su J. Chon. *See St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

[5] The State Court entered the order allowing the Amended Counterclaim on May 30, 2006.

[6] State Court Docket.

[7] Docket No. 13, ¶ 5.

[8] *Id.* ¶ 6. The amount of this retroactive benefit is unknown to the Court.

[9] Docket No. 27, Ex. A, ¶ 1. The Court notes that a copy of the Notice of Deposition served on October 28, 2005 is not attached to Ex. A, the Memorandum in Support of Motion to Compel Attendance at Deposition, as stated in the same, but the Court also notes that the State Court entered an Order to Compel Attendance at Deposition on May 4, 2007 finding that the "motion was well taken." The Court finds that this is adequate to conclude that the Notice of

Defendant's counsel in the State Court proceeding claimed that he contacted Plaintiff's counsel in the same to inform him that Defendant would not be able to attend the deposition on the date stated and would agree to a mutually convenient date, but no date was agreed upon between the parties.[10]

8. The Defendant's counsel in the State Court proceeding filed a Notice of Withdrawal of Counsel on January 5, 2006.[11]

9. After Defendant did not respond to Plaintiff's Notice to Appoint Counsel or Appear, Plaintiff's counsel served the Defendant with an Amended Notice of Deposition on February 2, 2006.[12] Again, a deposition was not held,[13] and the Plaintiff moved the State Court for an order compelling Defendant to attend his deposition.[14]

10. In May 2007, the State Court entered an Order to Compel Attendance at Deposition.[15]

11. The Defendant was again served with a Notice of Deposition in May 2007,[16] but the Defendant again did not attend the deposition.

12. The Plaintiff filed a Motion for Sanctions and Entry of Judgment Against Petitioner and

---

Deposition was served on October 28, 2005.

[10] *Id.* ¶ 2.

[11] State Court Docket.

[12] Docket No. 27, at 3.

[13] Docket No. 27, Ex. A ¶ 6. In support of Plaintiff's Motion to Compel Attendance in State Court, the Plaintiff claimed that the Defendant called and left a message with the receptionist of Plaintiff's counsel stating that he could not attend a deposition until after March 15, 2006, and he left no contact number or proposed date to reschedule.

[14] *Id.*

[15] *Id.* at Ex. E.

[16] *Id.* at Ex. F.

Request for Hearing on Damages (the "Motion for Sanctions"), and the State Court entered an order granting the Motion for Sanctions on March 30, 2010.[17]

13. At a separate hearing for damages, the State Court determined damages to be in the amount of $216,853.53 plus pre-judgment interest of $83,127.17. The damages were based in part on findings of fraudulent conduct by the Defendant and in part as sanctions against the Defendant. The judgment was entered on May 28, 2010 ("State Court Judgment").[18]

14. The State Court Judgment was not appealed and there have been no motions seeking to have it reconsidered or set aside.

15. The Defendant claims that he first knew of the State Court Judgment when his employer was served with a wage garnishment in 2012,[19] but, again, the Defendant has subsequently taken no action with the State Court to have the judgment reconsidered or set aside.

16. The Defendant filed the present Chapter 7 case in this Court on June 4, 2012.

17. The Plaintiff timely filed the current adversary proceeding.

### III. DISCUSSION

*A. Summary Judgment Standard*

A motion for summary judgment will be granted if the pleadings, admissions on file, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056; *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157

---

[17] Docket No. 14, ¶ 7.

[18] *Id*. at Ex. F.

[19] Docket No. 17, ¶ 4.

(1970). Pleadings must be liberally construed in favor of the party opposing summary judgment. *Harman v. Diversified Med. Invs. Corp.*, 488 F.2d 111, 113 (10th Cir. 1973). When a moving party's motion for summary judgment is made and supported as provided in this rule, the nonmoving party's response must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). A fact is material if it may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes as to non-material facts are not important and do not bar the entry of summary judgment. *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). If the nonmoving party's evidence is "merely colorable, or is not significantly probative, there is insufficient evidence and summary judgment may be granted." *Anderson*, 477 U.S. at 249–50. On a motion for summary judgment the court cannot evaluate credibility nor can it weigh evidence. *National American Ins. Co. v. American Re-Insurance Co.*, 358 F.3d 736, 742–43 (10th Cir. 2004).

The Court considers Plaintiff's Motion under this standard.

B.  *Position of the Parties*

The Plaintiff alleges two causes of action. First, the Plaintiff asserts that the debt determined in the State Court Judgment is non-dischargeable under 11 U.S.C. § 523(a)(2)(A).[20] The Plaintiff argues that she is entitled to summary judgment in part because the doctrine of collateral estoppel precludes the Defendant from denying the findings of fact and judgment of the State Court. Second, pursuant to § 523(a)(15), the Plaintiff claims that the debt is non-dischargeable because she is the former spouse of the Defendant and the judgment was incurred in connection with an order of the

---

[20] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.

6

court of record. Plaintiff contends that although her marriage was annulled ab initio, she is a former spouse because particular laws, such as the Utah Uniform Probate Code and the Social Security Act, treat an annulment similar to a divorce.

To the first cause of action, the Defendant argues that the Plaintiff cannot win on summary judgment because the doctrine of collateral estoppel does not apply. He claims that he was unaware of the State Court Judgment or efforts to obtain the same as he moved five times since the Annulment Decree, thus the State Court Judgment is not entitled to preclusive effect. To the second cause of action, the Defendant argues that because the marriage was annulled ab initio at the request of the Plaintiff, the marriage never legally existed under Utah law. The Defendant notes that the Plaintiff received a great benefit in obtaining an annulment: the annulment allowed her to obtain retroactive Social Security survival benefits from her late first husband. The Defendant concludes that since the marriage never existed as a matter of law, the Plaintiff cannot now be considered his former spouse under § 523(a)(15).

C. *Analysis*

The Court finds there are no genuine issues as to any material fact. The only matters that the Court finds need deciding are issues of law: first, is the State Court Judgment entitled to preclusive effect to grant the Plaintiff's Motion under § 523(a)(2)(A); and second, was the Plaintiff a "former spouse" of the Defendant for purposes of § 523(a)(15). The Court will address each in turn.

1. *Plaintiff's Motion under Section 523(a)(2)(A)*

a. *Collateral Estoppel*

Collateral estoppel precludes this Court from relitigating an issue that has already been litigated in another court. *San Remo Hotel, L.P. v. City and Cnty. of San Francisco, Cal.,* 545 U.S.

323, 336–337 (2005). Collateral estoppel "is designed to prevent needless relitigation and bring about some finality to litigation." *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009). If the prior judgment was rendered in a state court, bankruptcy courts look to state law to determine if collateral estoppel applies. *See Hill v. Putvin (In re Putvin)*, 332 B.R. 619, 624–25 (B.A.P. 10th Cir. 2005); *see also Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009) ("Because we are here concerned with the preclusive effect of a federal-court judgment, federal law applies."); *Cobb v. Lewis (In re Lewis)*, 271 B.R. 877, 883 (B.A.P. 10th Cir. 2002) ("The Full Faith and Credit Statute directs a federal court to look to the preclusion law of the state in which the judgment was rendered."). There are four elements that must be met to apply collateral estoppel under Utah law: "(1) The issue decided in the prior adjudication must be identical to the one presented in the action in question; (2) there must be a final judgment on the merits; (3) the party against whom the plea is asserted must be a party in privity with a party to the prior adjudication; and (4) the issue in the first action must be completely, fully, and fairly litigated." *Gomes v. Wood*, 451 F.3d 1122, 1132 n.4 (10th Cir. 2006) (citing *Career Serv. Review Bd. v. Utah Dep't of Corr.*, 942 P.2d 933, 938 (Utah 1997). A judgment entered on default does not preclude the application of collateral estoppel. *See e.g.*, *In re Corey*, 583 F.3d 1252–53. As the Tenth Circuit Court of Appeals noted in *In re Jordana*, No. 99-6194, 2000 WL 783401, at *1 (10th Cir. June 20, 2000), a default judgment can be granted preclusive effect "where the losing party has had a full and fair opportunity to participate in the previous litigation, but has engaged in serious obstructive conduct resulting in a default judgment." *See also In re Armstrong*, 294 B.R. 344, 357–58 (B.A.P. 10th Cir. 2003) ("In this Circuit, default judgments also have preclusive effect.").

      The Court is persuaded that the principles of collateral estoppel apply to bar the Defendant

from avoiding the effects of the State Court Judgment. First, the issues in the prior adjudication are identical to the ones presented in the § 523(a)(2)(A) claim. The State Court Judgment made specific findings that the Defendant made fraudulent misrepresentations to the Plaintiff, which induced her to incur significant costs and expenses.[21] Second, the State Court entered a final judgment. Third, the Defendant was a party to the lawsuit. Lastly, although the State Court Judgment was a default judgment, the Defendant had a full and fair opportunity to participate in the litigation. The Defendant, not the Plaintiff, initiated the divorce proceeding in the State Court. The Defendant chose the venue. He filed an Answer to the Plaintiff's July 1, 2004 Counterclaim, and the Motion for Leave to File Amended Counterclaim was filed on December 16, 2004, months before the Annulment Decree was entered on August 29, 2005. Further, the Annulment Decree states that "[b]ifurcation is necessary because *discovery and pretrial issues will continue for an extended period*."[22] Accordingly, the Defendant knew that the lawsuit was pending. Once in a lawsuit by proper service or by initiating the proceeding, a party has a duty to follow it and keep apprised of its status. *Cf. In re Gregory*, 931 F.2d 62 (10th Cir. 1991) ("It is the duty of the litigating parties to keep themselves apprised of the orders of the court.").

The Defendant ignored discovery requests, disobeyed the order of the State Court compelling attendance at his deposition, and failed to appear at set hearings. To say that he moved five times and never knew anything about the sanctions for failure to respond to discovery or respond to a motion for default judgment ignores his responsibility to keep abreast of the status of the case. At one time during the State Court proceeding, the Defendant was represented by counsel, which

---

[21] Docket 14, Ex. F.

[22] Docket No. 14, Ex. D (emphasis added).

counsel subsequently withdrew on January 4, 2006. However, this does not negate the Defendant's responsibility. He could have and should have provided a forwarding address, and, if he was living with relatives, he should have asked his relatives to bring to his attention any mailings that came to their address with his name on them. The Defendant had a full and fair opportunity to defend against the Plaintiff's Motion for Sanctions and Entry of Default Judgment in the State Court. The elements of collateral estoppel are met in this case.

### b. The Rooker-Feldman Doctrine

Further, pursuant to the *Rooker-Feldman* doctrine, this Court is obligated to recognize the final orders from state courts. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005); *see also Reed v. Allen*, 286 U.S. 191, 201 (1932) (stating there is a "general and well-settled rule that a judgment, not set aside on appeal or otherwise, is equally effective as an estoppel upon the points decided, whether the decision be right or wrong"). The *Rooker-Feldman* doctrine's application is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. This Court will not "entertain a proceeding to reverse or modify the judgment for errors." *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

Here, the State Court found that the Defendant was properly served with notice,[23] and entered a final judgment against the Defendant and conducted a hearing on damages. Even though some time has passed since the State Court Judgment was obtained, the Defendant could have filed a

---

[23] Docket No. 27, Ex. E ("Based upon proper service and non-appearance of Petitioner . . . ."); Ex. F ("[T]he Court having found that Petitioner was served with notice of time and place of hearing.").

10

motion in the State Court seeking some extraordinary relief pursuant to Utah Rules of Civil Procedure 55(c) and 60(b)(6).[24] As of the date of the hearing on this matter, the Defendant has done nothing in the State Court to have the judgment reconsidered or set aside. This Court will not accept the Defendant's invitation to review and reject that judgment. The Defendant received notice and lost in the State Court proceeding, and this Court will not ignore the final order from the State Court.

Accordingly, the State Court Judgment, which articulates findings of fraud satisfactory to this Court, are binding on the Defendant. As a result, the Plaintiff's Motion should be granted as to the first cause of action under § 523(a)(2)(A).

  2. *Plaintiff's Motion under § 523(a)(15)*

    a. *"Former spouse" under § 523(a)(15)*

As to the second cause of action, the Defendant persuades the Court that the Plaintiff is not a "former spouse" under § 523(a)(15).[25] In determining the marital status of a debtor under the Bankruptcy Code, courts have traditionally looked to state law. *See In re Cohen*, No. 7-10-15616, 2012 WL 400715, at *2 (Bankr. D.N.M. Feb. 7, 2012) ("To determine whether two people are married . . . it is appropriate for the Court to look to applicable state law."); *see also In re Balas*, 449 B.R. 567, 570 (Bankr. C.D. Cal. 2011) (looking to state law to determine that a same sex couple could file as joint debtors because they were legally married under the laws of the state). *Cf. Butner v. United States*, 440 U.S. 48, 55 (holding that aside from specific provisions outlined in the

---

[24] At oral argument, Defendant's counsel stated that the Defendant had a lack of resources to ask the State Court for relief, but the Court does not find this argument convincing as the Defendant has competent counsel present in this matter.

[25] To trigger the application of § 523(a)(15), the debt must be owed to "a spouse, former spouse, or child of the debtor." § 523(a)(15). Here, the only question is if the Plaintiff is the "former spouse" of the Defendant for the purposes of § 523(a)(15).

Bankruptcy Code, bankruptcy courts look to state law to determine property rights in the assets of the bankruptcy estate).

Under Utah law, a state court will annul a marriage only under limited circumstances, such as common law fraud. *See* UTAH CODE ANN. § 30-1-17.1(1); *Haacke v. Glenn*, 814 P.2d 1157, 1158 (Utah Ct. App. 1991) ("The fraud must be such that directly affects the marriage relationship rather than 'merely such fraud as would be sufficient to rescind an ordinary civil contract.'") (citing *Bing Gee v. Chan Lai Yung Gee*, 202 P.2d 360, 364 (Cal. Ct. App. 1949)).[26] Once an annulment ab initio is granted, it is deemed that the marriage never legally existed regardless of the number of years the couple was together. *See Cecil v. Cecil*, 356 P.2d 279, 281 (Utah 1960) ("[I]n the case of an annulment, the judgment is that there was never a valid marriage.").

Plaintiff points to the definition of "divorced individual" found in the Utah Uniform Probate Code to support her claim that she is a former spouse. Section 75-2-804(c) defines a "divorced individual" to include an individual whose marriage was annulled. However, § 75-2-804(b), directly above the provision cited by Plaintiff, defines a "divorce or annulment" to be any divorce or

---

[26] The findings in the State Court Judgment based on common law fraud do not alter the Court's analysis in Section III(C)(1)(a). The findings of fraud by the State Court are also sufficient to satisfy the requirements under § 523(a)(2)(A) in this case. *Compare Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 536 (Utah 2002) (noting that to successfully establish a common law fraud claim, a party must show "(1) [t]hat a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage") (citing *Franco v. Church of Jesus Christ of Latter-Day Saints*, 21 P.3d 198 (Utah 2001)), *with Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996) ("The debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was reasonable; and the debtor's representation caused the creditor to sustain a loss.").

annulment "that would exclude the spouse as a surviving spouse." Thus, although the treatment of divorce and annulment in probate may be similar, its similar treatment is to ensure that, whether the marriage ended by divorce or annulment, the non-deceased individual is not given the status of a surviving spouse. *See* UTAH CODE ANN. § 75-2-802 ("An individual . . . whose marriage has been annulled is not a surviving spouse . . . ."). The Plaintiff also relies on Utah Code § 30-1-17.2, which in part provides for a division of property that accumulated subsequent to the marriage "as may be equitable" after a marriage is annulled. *See* UTAH CODE ANN. § 30-1-17.2. As described in *Ferguson*, this provision allows for a court to use its discretion to make awards "as equity requires" when a marriage is annulled, 564 P.2d at 1382, but it does not alter the effect of the annulment that the marriage is invalid. The Utah Court of Appeals stated in *Corwell v. Corwell*: "[T]he distinction between divorce and annulment has previously been made by the legislature, which has demonstrated the ability to expressly account for annulment when it so chooses. If the legislature had intended the 'was a spouse' language to be satisfied by an annulled marriage, it could have said so expressly." 179 P.3d 821, 823 (Utah Ct. App. 2008). Although *Corwell* addresses the effect of an annulment under the Cohabitation Abuse Act, the Court finds *Corwell*'s analysis applicable to the current case. Under Utah law, an annulment means that the marriage never legally existed, and the annulment is not "subject to collateral attack." *See Cecil*, 356 P.2d at 280. Therefore, where the marriage between two individuals is annulled ab initio, those individuals are not former spouses.

Here, under Utah law, the Plaintiff and the Defendant were never legally married, thus the Plaintiff does not qualify as a "former spouse" under § 523(a)(15). This is not an odd conclusion considering that the Plaintiff requested the annulment, which she used as a mechanism to obtain retroactive Social Security survivor benefits. The annulment invalidated the marriage, and

accordingly, the Plaintiff does not qualify for relief under § 523(a)(15), and her second cause of action is hereby dismissed.[27]

Plaintiff's counsel is requested to submit an order and judgment consistent with this decision.

---

[27] The Court recognizes that the Plaintiff's Motion is for summary judgment only and not the Defendant's motion to dismiss or for summary judgment; however, given the Court's conclusion that Plaintiff is not a former spouse of the Defendant under § 523(a)(15) as a matter of law, the Court finds no reason to continue any proceedings under Plaintiff's second cause of action as there is no issues of material fact in question. The trial scheduled should be stricken.

_____ooo0ooo_____
**SERVICE LIST**

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Mona Lyman Burton
HOLLAND AND HART LLP
222 S. Main Street, Ste. 2200
Salt Lake City, UT 84101
    *Attorney for Plaintiff*

W. Sean Mawhinney
LAW OFFICES OF W. SEAN MAWHINNEY
200 West Civic Center Drive, Ste. 300
Sandy, UT 84070
    *Attorney for Defendant*

Stanford Malzahn Ellsworth
14424 Henry Day Rd.
Draper, UT 84020
    *Defendant/Debtor*